IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH PARTICULAR CELLULAR TOWERS | Case No. 7:22mj101<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Ryan Kennedy, a Special Agent with the Federal Bureau of Investigation, being duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant for records and information associated with certain cellular towers ("cell towers") that are in the possession, custody, and/or control of AT&T, a cellular service provider headquartered in North Palm Beach, FL; Verizon, a cellular service provider headquartered in Bedminster, NJ; US Cellular, a cellular service provider headquartered in Chicago, IL; and T-Mobile, a cellular service provider headquartered in Parsippany, NJ. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require AT&T, Verizon, US Cellular, and T-Mobile to disclose to the government the information further described in Section I of Attachment B.

2. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been so employed since August 2021. I currently work in the FBI Richmond, Virginia, Field Office, Roanoke Resident Agency. I am assigned to work a variety of criminal and national security matters, including the investigation of violent crimes, narcotics offenses, and major offenses such as federal bank robberies and the apprehension of federal fugitives. I have received

training and gained experience in conducting investigations, interviewing and interrogation techniques, arrest procedures, search warrant applications, the execution of searches and seizures, computer crimes, computer evidence identification, and various other criminal laws and procedures.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 2113 have been committed by at least one unidentified man. There is also probable cause to search the information described in Attachment A for evidence of these crimes as further described in Attachment B.

## PROBABLE CAUSE

5. On October 26, 2022, the FBI received a call regarding a bank robbery that had occurred at a Truist Bank branch in Roanoke, VA, which is located within the Western District of Virginia. The FBI responded to the scene and spoke with officers from the Roanoke City Police Department, who were already present. According to the officers and surveillance footage, at approximately 9:20 a.m., an unidentified Black man entered the Truist Bank at 2230 Melrose Avenue NW, Roanoke, VA, 24017. The unidentified man was wearing an orange beanie, glasses, a blue surgical mask, a black coat with a hoodie underneath, and dark pants. The unidentified man approached the window and handed a teller a note. The note demanded at least $5,000 in cash, and it instructed the teller not to hit any alarms or to add any dye packs. The teller took money from the top drawer and put it into a bag. The man then moved to another teller, who did the same. The

man displayed a firearm at one point, and, after receiving the bag of cash, he left the building. The total amount of cash he received was $6,485.

6. On October 28, 2022, at approximately 9:35 a.m., an unidentified Black man wearing a beanie that appears to have been brown or orange, glasses, a blue surgical mask, a black coat with a hoodie underneath, and gray pants, entered the Truist Bank at 112 McClanahan Street SW, Roanoke VA, 24014, located within the Western District of Virginia. This man is believed to be the same man who robbed the branch on Melrose Avenue. The man approached the teller and presented a handwritten note requesting cash from the teller. The teller provided an amount of cash that investigators later determined to be $5,969. The man then put the cash in a purple bag that he had brought with him, retrieved the note, and left the bank.

7. Investigators have determined that these Truist Bank branches are serviced by cellular providers AT&T, Verizon, US Cellular, and T-Mobile.

8. I know from training and experience that suspects engaged in criminal activity often possess and carry cellular devices and that these cellular devices routinely and automatically communicate with cellular towers in their area in order to stay in contact with the cellular network.

9. It is therefore likely that any cellular devices possessed by the unidentified suspect during the dates and times of the robberies would have been in contact with one or more of the cellular towers that provided cellular service in those areas. This information is likely to assist law enforcement in identifying individuals who were in close proximity to the area of the robberies during the times indicated. Such information will assist law enforcement in determining who was involved in the bank robberies.

10. In my training and experience, I have learned that wireless providers such as AT&T, Verizon, US Cellular, and T-Mobile are companies that provide cellular communications

service to the general public. In order to provide this service, many cellular service providers maintain antenna towers ("cell towers") that serve and provide cellular service to devices that are within range of the tower's signals. Each cell tower receives signals from wireless devices, such as cellular phones, in its general vicinity. By communicating with a cell tower, a wireless device can transmit and receive communications, such as phone calls, text messages, and other data. When sending or receiving communications, a cellular device does not always utilize the cell tower that is closest to it.

11. Based on my training and experience, I also know that each cellular device is identified by one or more unique identifiers. For example, with respect to a cellular phone, the phone will be assigned not only a unique telephone number, but also one or more other identifiers, such as an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The types of identifiers assigned to a given cellular device are dependent on the device and the cellular network on which it operates.

12. Based on my training and experience, I know that cellular providers routinely and in their regular course of business maintain historical records that allow them to determine which wireless devices used cellular towers on the cellular provider's network to send or receive communications. For each communication sent or received via the wireless provider's network, these records may include: (1) the telephone call number and unique identifiers of the wireless device that connected to the provider's cellular tower and sent or received the communication ("the locally served wireless device"); (2) the cellular tower(s) on the provider's network, as well as the

4

"sector" (i.e., face of the tower), to which the locally served wireless device connected when sending or receiving the communication; and (3) the date, time, and duration of the communication. These records may also include the source and destination telephone numbers associated with the communication (including the number of the telephone that was called or that called the locally served wireless device) and the type of communication (e.g., phone call or SMS text message) that was transmitted.

13. Based on my training and experience, I know that cellular providers, such as AT&T, Verizon, US Cellular, and T-Mobile, have the ability to query their historical records to determine which cellular device(s) connected to a particular cellular tower during a given period of time and to produce the information described above. I also know that cellular providers have the ability to determine which cellular tower(s) provided coverage to a given location at a particular time.

14. Based on my training and experience and the above facts, information obtained from cellular service providers such as AT&T, Verizon, US Cellular, and T-Mobile that reveals which devices used a particular cell tower (and, where applicable, sector) to engage in particular communications can be used to show that such devices were in the general vicinity of the cell tower at the time the communication occurred. Thus, the records described in Attachment A will identify the cellular devices that were in the vicinity of the Truist Bank branches at the times just before, during, and just after the crimes occurred. This information, in turn, will assist law enforcement in confirming whether the unknown man at the banks is the same individual and his identity, as well as who may have been assisting him.

15. The government is seeking search warrants for information associated with cellular towers in the vicinity of the two Truist Bank branches that were robbed. The government intends

to compare the data received to see which phones communicated with the cellular towers in the vicinity of these two locations around the time of the robberies to identify the individual or individuals involved in the bank robberies. The government will not make further use of the information pertaining to any of the phones that do not meet this criteria, without further leave of the Court.

## AUTHORIZATION REQUEST

16. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c).

17. I further request that the Court direct AT&T, Verizon, US Cellular, and T-Mobile to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on AT&T, Verizon, US Cellular, and T-Mobile, who will then compile the requested records at a time convenient to them, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

18. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation, including by giving targets an opportunity to destroy or tamper with evidence, change patterns of behavior, notify confederates, and flee from prosecution.

Respectfully submitted,

_____
Ryan Kennedy
Special Agent
FBI

Subscribed and sworn to before me on  November 2            , 202 2

*Robert S. Ballou*
_____
Honorable Robert S. Ballou
UNITED STATES MAGISTRATE JUDGE

7